Baldwin, J.
delivered the opinion of the Court.
By the contract of lease between the Prestons and Overly & Sanders, the rent thereby reserved of two thirds of the salt to be manufactured by the lessees at-the salt works, accrued as the same was made, and in a condition for delivery; but the lessees, in consideration of the lease embracing the salt and plaister plantations, agreed to make sales of the rent salt, with their own, and pay over the due proportions of the lessors as the moneys could be collected. The quantity of the rent salt was therefore dependent upon the amount which should be manufactured. But to insure to the lessees an adequate profit, the lessors contracted that the salt water should continue as good as at the date of the, lease, and of sufficient quantity to manufacture 100,000 • bushels per annum; and on the other hand, to ensure to the lessors an adequate rent, the lessees contracted to manufacture at least 60,000 bushels of merchantable salt per annum. And in aid of the stipulations of, the contract, it was provided, that in the event of a failure as to the quality or quantity of the water, the lessees'. *131 might avoid the lease, on giving the lessors six months notice; and that in case of the inability or the failure of the lessees to perform their part of the contract, the lessors, upon giving two months notice, might, enter and avoid the lease : these provisions, however, did.not exclude the parties from resorting, at their election, to their respective remedies by action or suit for non-performance of the contract. The rent, therefore, to be distrained for, or recovered by the lessors, in any one-year, was to be governed by the quantity of salt.actually manufactured, and in the event of the failure of the lessees to manufacture 60,000 bushels in such year, the proper action would be for the damages occasioned by, and to the extent of, such failure, and not for a specific rent of 40,000 bushels; the reservation of rent being out of the salt as manufactured; or the proceeds thereof.
The contract of Overly & Sanders with M’flall & King, operated as an assignment of this lease; and if it had stood alone, the rights of the Prestons to exact performance from M’Call & King of the stipulations of the lease, would have been governed by the law regulating the relation of lessors and the assignees of their lessees. But the contract between the Prestons and Overly & Sanders expressly provided that the latter should not underlet, or assign, or in any manner dispose of the lease, without the consent in writing of the former ; and therefore the lessees could not have parted from their estate to M’Call & King without such consent, which was obtained, and is evidenced by the cotemporaneous contract between the Prestons and M’Call & King.
The effect of the last mentioned contract was to terminate the lease so made by the Prestons, and so transferred by the latter to M’Call & King, and to create a new lease from the Prestons to M’Call &. King, for an extended term, and with the reservation of an annual *132 rent, not in kind, but in money at a fixed amount, The new lease commenced some weeks before the expiration of the first year of the former lease, and operate(j ag a surrell(jer thereof. It extinguished the liabiCities of M’Call & King as assignees of the first lease prospectively, inasmuch as it was the substitution of another tenancy; and retrospectively there could be no liability on their part as mere assignees for prior breaches of contract on the part of their assignors.
M’Call & King, however, by their contract with Overly & Sanders, “ bound themselves to assume and pay all the contracts, debts and liabilities relating to the salt making business, not theretofore discharged and performed by Overly & Sanders.” This undertaking obviously embraced the arrears of salt rent then on hand, or which had been transported and sold, and the proceeds unaccounted for by Overly & Sanders. Nothing is plainer than that the contracts, debts and liabilities” of the latter, “ relating to the salt making business,” included the rents of the very property out of which the salt was manufactured. And if M’Call & King had merely succeeded to the tenancy of Overly &■ Sanders for the residue of their term, such an undertaking might have embraced the covenant of Overly & Sanders to manufacture at least 60,000 bushels of salt ■per annum. But that covenant assumed the continuance of the tenancy of Overly & Sanders, and there could be no breach of it until the end of a year; and such breach was of course rendered impracticable by the surrender of the lease before that time, and the substitution of a new lease thenceforth, with the reservation of a pecuniary rent. The undertaking, therefore, of M’Call & King to perform the contracts of Overly & Sanders in relation to the salt making business, could not have contemplated a covenant on the part of the latter which had not then been, and never could be broken.
*133 Although the Prestons were not formal parties to the covenant of M’Call & King to assume the liabilities which had been incurred by Overly &, Sanders, yet it was made in part for their benefit, and a consideration therefor moved from them, as well as from Overly & Sanders. That consideration consisted of their consent to the assignment to M’Call & King, their acceptance from those assignees of the surrender of the old term, and their granting to them a new term of longer duration and upon different reservations. Indeed, the whole change of tenancy was an arrangement in which the Prestons participated,' and which could not have been accomplished without their concurrence. They have, therefore, a right, so far as they are concerned, to enforce this undertaking of M’Call & King; -and the effect of their doing so, is to accomplish its true spirit and meaning so far as concerns Overly & Sanders; which was not merely for their indemnity against the debts and contracts contemplated, but for their complete exoneration, by the engagement of M’Call & King to relieve them therefrom, and become the debtors and paymasters in their stead.
M’Call & King were therefore bound to account with the Prestons for the salt manufactured at the salt works by Overly & Sanders, and chargeable with two thirds of the proceeds, after deducting the costs of transportation of so much thereof as was transported and sold by them, and with that proportion of the proceeds of so much thereof as was sold by them at the salt works, and with the same proportion of the value there of so much thereof as there remained unsold.
But inasmuch as the undertaking of M’Call & King for the contracts, debts and liabilities of Overly &. Sanders in relation to the salt making business, extended only to those which had not theretofore been discharged and performed, M’Call & King are entitled against the salt rents claimed by the Prestons, to all proper credits *134 of Qverly & Sanders at the time of that undertaking, as well for set offs as for actual payments.
There is no -foundation, however, for the pretension ^ ]y(soall & King of a liability to them on the part of prestons for debts assumed and paid by them to other creditors of Overly & Sanders. If the alleged partnership of the Prestons with Overly & Sanders iri the sales of salt could give any colour to such a pretension, there was in truth no such partnership. The sales of the rent salt which Overly & Sanders contracted to effect as the agents of the Prestons, together with their own, constituted no partnership, but rendered them accountable .for the proceeds thereof; and if they chose to contract debts payable in salt for horses or any thing .else, the Prestons were in no wise liable therefor; but .had a right, notwithstanding, to require payment from Overly & Sanders of the proceeds of the actual sales, in money.
The accountability of M’Call & King to the Prestons on the head of the salt rents, or the proceeds thereof, assumed for Overly & Sanders, was a proper subject for the jurisdiction of a Court of equity, involving, as it did, mutual items of account, growing out of an agency and ■ connected with a trust, and complicated as it was by conflicting pretensions, and requiring a discovery, the production of books and papers, and adjustment by a commissioner. And though in relation to the money rents reserved in the lease to M’Call & King, and the numerous payments and set offs connected therewith, there seems to have been no actual dispute-between the parties, yet the.adjustment of that matter was delayed and prevented by the controversy in regard to the salt rents, without the adjudication of which, the ultimate balance between the parties could not be ascertained. The whole matters of account existing between them, constituted, indeed, but one subject, and grew out of the same transaction — the -substitution of M’Call & *135 King as the tenants of the Prestons in the stead of Overly & Sanders, their assumption of the salt rents which had theretofore accrued from Overly & Sanders, and their engagement for money rents from themselves thereafter. Under the circumstances, and after the whole accounts between the parties had, by a consent order, been referred to a commissioner, and reported by him, with special statements at the request of M’Call & King of their pretensions, embracing the money as well as the salt rents, and indicating a balance in their favour upon the whole accounting; the entire merits of the case ought to have been ascertained, and the balance resulting therefrom, whether in favour of the one party or the other, decreed by the Court below.
The cause is, however, not in a condition to do justice between the parties without further enquiry. The commissioner hsis omitted in various respects to state, explain and report the grounds and evidence upon which he proceeded; and the consequence is, that his views of the accounts are in a great measure obscure and unintelligible.
The Court is therefore of opinion, that the Circuit court erred in dismissing the bill of the appellants, instead of recommitting the report of the commissioner, with the exceptions thereto, for reconsideration and readjustment of the accounts between the parties, upon the principles above indicated, and such proper evi-. dence as should be adduced before him; with such proper directions from the Court as either of the parties should request, for the examination of other parties on oath, and the discovery and production of books and papers.
It is therefore adjudged, ordered and decreed, that the decree of the Circuit court be reversed and annulled, with costs to the appellants; and that the cause be remanded to the Circuit court, to be proceeded in upon the principles, and in the mode indicated in the foregoing opinion and decree.